UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NEIL ROSENBOHM,**

    **Plaintiff,**

  v.                                   **Civil Action 2:17-cv-731**
                                            **Judge Algenon L. Marbley**
                                            **Magistrate Judge Chelsey M. Vascura**

**CELLCO PARTNERSHIP,**

    **Defendant.**

## OPINION AND ORDER

This matter came before the Court for a telephonic conference on May 15, 2019 arising out of Defendant's Objection (ECF No. 64) to this Court's Scheduling Order dated April 17, 2019 (ECF No. 63). All parties appeared through counsel. This order memorializes that conference and further explains the Undersigned's reasoning for the rulings made during that conference.

### I.    BACKGROUND

This case arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111.01, *et seq.* (the "Ohio Act"). Plaintiff worked for Defendant Cellco Partnership (d/b/a "Verizon") as a "Solution Specialist" at three locations from August 2013 to January 2017, in Hawaii, Ohio, and West Virginia. Plaintiff alleges that Defendant engaged in a scheme not to pay Solution Specialists and similarly-situated employees for the work they performed at Verizon store locations. (Compl., ECF No. 1.) Specifically, Plaintiff alleges that Solution Specialists and

similarly-situated employees were required to work off-the-clock at the end of shifts and to participate in lengthy unpaid online training courses.  (*Id.* at ¶¶ 13–16.)  He also alleges that Verizon failed to maintain accurate records of hours worked, including overtime work.  (*Id.* at ¶ 17.)

On September 17, 2018, the Court granted Plaintiff's Motion to Conditionally Certify an FLSA Collective Action and to Authorize Notice.  (ECF No. 35.)  Thereafter, Plaintiff served notice of the conditionally-certified FLSA collective action to all former and current Solution Specialists employed by Defendant nationwide during the three years prior to the Order granting conditional certification.  At the close of the opt-in period, 3,875 opt-in plaintiffs had filed consent forms to join the FLSA collective action.  (Proposed Scheduling Order at 3, ECF No. 59.)  The parties agreed that, due to proportionality concerns, only a portion of the 3,875 opt-in plaintiffs would be subject to full discovery, but disagreed as to how many.  (*Id.* at 7–10.)

Following a lengthy in-person discovery conference with the Court on April 10, 2019, the Undersigned issued a Scheduling Order on April 17, 2019 setting various Second Stage discovery deadlines and limiting discovery to a random sample of 94 opt-in plaintiffs.  (ECF No. 63.)  This number was arrived at by selecting a 95% confidence interval and a 10% margin of error applicable to a population size of 3,875.  (*See* Required Sample Size table, attached to Defendant's Objection as Exhibit A, ECF No. 64-1.)  Defendant filed its Objection to the Scheduling Order on May 1, 2019.

## II.     ANALYSIS

**A.     Random sampling is required to ensure the sample is representative of the opt-in class.**

Defendant's Objection centers on the Undersigned's directive in the Scheduling Order that "Second Stage opt-in discovery, and any potential trial or other testimony from opt-in

plaintiffs, will proceed based upon a randomly selected sample size of 94 opt-in plaintiffs." (Scheduling Order at 1, ECF No. 63.)  Defendant contends that limiting opt-in discovery to a random sample is "based on a flawed assumption that the opt-in class is similarly situated (which is Plaintiff's burden to prove at the close of Second Stage discovery)."  (Objection at 1, ECF No. 64.)  Defendant argues that, to account for the heterogeneity of the opt-in class, the parties must each be allowed to "select, in equal numbers, the identity of those opt-in plaintiffs to be deposed."  (*Id.* at 8.)

Defendant's position fails to appreciate fundamental principles of statistical sampling.  The validity of a random sample does not depend on any pre-conceived assumptions about the characteristics of the population from which the sample is drawn.  On the contrary, sampling "allows a statistician to use data from a sample of a given population to draw conclusions about the entire population."  *Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-00758, 2015 WL 410703, at *5 (N.D. Ohio Jan. 29, 2015).  That is, sampling, when performed in a statistically sound manner, will reveal whether there is heterogeneity among the opt-in plaintiffs such that final certification is or is not appropriate.  If, as Defendant contends, the opt-in plaintiffs are not similarly situated, those differences will be reflected in the sample.  *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019–20 (5th Cir. 1997) ("The essence of the science of inferential statistics is that one may confidently draw inferences about the whole from a representative sample of the whole."); *Nelson v. Am. Standard, Inc.*, No. 208-CV-390-TJW-CE, 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4, 2009) ("The fundamental precept of statistics and sampling is that meaningful differences among class members can be determined from a sampling of individuals."); *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 318 (M.D. Fla. 2018) ("The analysis of a sample or subgroup is a commonly used scientific method of efficiently drawing inference

about a larger population."); *Cranney v. Carriage Servs., Inc.*, No. 2:07-CV-01587-RLHPAL, 2008 WL 2457912, at *2 (D. Nev. June 16, 2008) ("[I]f there are differences among various [employee] locations, a sampling of plaintiffs should reveal them.").

But one can draw inferences about the larger population only if the sample is representative of that larger population. And representativeness is best ensured using random sampling. *Andreas-Moses*, 326 F.R.D. at 318 ("The sample is *representative* of the larger population only when it is chosen using sound methods."); *Chevron*, 109 F.3d at 1019 (to be representative, "the sample must be a randomly selected one of sufficient size so as to achieve statistical significance to the desired level of confidence in the result obtained."); *Hurt*, 2015 WL 410703 at *5 ("For the survey's results to be accurate, it must use a sampling method that ensures the sample is representative of the entire population, meaning that the sample accurately reflects the relevant parameters of the entire population. Usually this is done using some version of random sampling."); Shari Seidman Diamond, *Reference Guide on Survey Research*, in Federal Judicial Center Reference Manual on Scientific Evidence, 380 (January 1, 2011) ("The use of probability sampling techniques maximizes both the representativeness of the survey results and the ability to assess the accuracy of estimates obtained from the survey.").

Conversely, any non-random sampling method increases the likelihood that the sample will be biased and not accurately represent the larger population. *Hostetler v. Johnson Controls, Inc.*, No. 3:15-CV-226 JD, 2016 WL 3662263, at *12 (N.D. Ind. July 11, 2016) (a non-random sample "creates a potential for systemic bias that would prevent the results of the survey from being reliably extrapolated from the sample to the class as a whole."); David A. Freedman, David H. Kaye, *Reference Guide on Statistics*, in Federal Judicial Center Reference Manual on Scientific Evidence, 225, 230 (January 1, 2011) ("Probability methods [of sampling] are

designed to avoid selection bias. . . . It is randomness [ ] that provides assurance of unbiased estimates from a randomized controlled experiment or a probability sample.").

Hand-picking is almost certain to introduce a substantial amount of selection bias into the sample, such that the Court could not rely on the representativeness of the sample as to the population of all 3,875 opt-in plaintiffs. *Chevron*, 109 F.3 at 1019–20 (where each party selected 15 cases out of 3,000 claimants, "the results that would be obtained from a trial of these thirty (30) cases lack the requisite level of representativeness so that the results could permit a court to draw sufficiently reliable inferences about the whole that could, in turn, form the basis for a judgment affecting cases other than the selected thirty"); *Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 173 (E.D.N.Y. 2011) (rejecting non-random sampling as "simply unsound: the Court cannot fathom how the parties' hand-selection of ten or twenty individuals would produce testimony that is meaningfully representative or reflective of the experience of each individual member of a 17,000 member class."). For these reasons, at the in-person conference and in the Scheduling Order, the Undersigned rejected the parties' original proposal that they each be permitted to hand-pick a certain number of opt-in plaintiffs who would be subject to discovery and instead ordered that 94 opt-in plaintiffs be selected at random.

Two further points bear mentioning: First, Defendant has not argued that it is entitled to take full discovery of all 3,875 opt-in plaintiffs. It has conceded, based on proportionality concerns under Fed. R. Civ. P. 26(b)(1), that full discovery of all opt-in plaintiffs is not feasible. (Objection at 8, ECF No. 64.) Thus, Defendant is not opposed to sampling or representative discovery itself; Defendant merely objects to the method of sample selection ordered by the Court. As explained *supra*, however, any method other than random sampling will introduce bias and decrease the reliability of the sample. Second, Defendant was expressly invited by the

Undersigned during the in-person discovery conference to submit expert testimony supporting the validity of its hand-picking proposal, and Defendant declined to do so. Instead, Defendant's objection to random sampling is based on its bare assertion, unsupported by any authority, that the validity of a random sample depends "on a flawed assumption that the opt-in class is similarly situated." As explained *supra*, Defendant's understanding is simply incorrect. The Undersigned therefore sees no reason to revisit the decision that any sampling of opt-in plaintiffs must be done randomly.

**B.     Random sampling does not violate Defendant's due process rights.**

According to Defendant, limiting discovery to a random sample will also deprive Defendant of its due process right to develop every available defense in the final certification and trial proceedings. (Objection at 9, ECF No. 64.) This same argument was rejected by the United States Court of Appeals for the Sixth Circuit in *Monroe v. FTS USA, LLC*, 860 F.3d 389, 395 (6th Cir. 2017) ("[T]he use of representative testimony and an estimated-average approach" allowed "defenses successfully asserted against representative testifying technicians" to be "properly distributed across the claims of nontestifying technicians."). *See also Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357–58 (S.D. Ohio 2006) ("limiting discovery to a statistically significant representative sampling, at this juncture, will both reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and yet afford the defendant a reasonable opportunity to explore, discover and establish an evidentiary basis for its defenses."); *Gentrup v. Renovo Servs., LLC*, No. 1:07-CV-430, 2010 WL 6766418, at *7 (S.D. Ohio Aug. 17, 2010) ("The Court finds that the use of representative discovery does not violate due process and is proper where it facilitates the orderly proceeding of a collective action."). Thus, limiting discovery to a random sample of opt-in plaintiffs does not inherently impinge upon Defendant's due process rights.

Courts have recognized, however, that defendants may be entitled to further discovery if they can demonstrate (not merely assert) that they cannot sufficiently develop their defenses based on an initial sample.  *Smith*, 236 F.R.D. at 358 ("[I]f, after conducting the discovery of the representative sample, defendants can demonstrate to the Court that broader discovery is appropriate and necessary, the defendants can so move."); *Wade v. Werner Trucking Co.*, No. 2:10-CV-270, 2014 WL 1091707, at *26–27 (S.D. Ohio Mar. 18, 2014) (where there were "important differences amongst a 10–person sampling of the putative class," the court allowed the defendant "to obtain discovery regarding each member of the entire [112-member] class— both to determine if there is a class, and to determine if each proposed member is exempt.").

Accordingly, discovery of the FLSA conditionally-certified class at this juncture remains limited to a random sample of 94 opt-in plaintiffs.  However, Defendant may, after completion of discovery with regard to the 94-plaintiff sample, move for leave to conduct further discovery if it can demonstrate why further discovery is necessary.

**C.**     **Discovery as to the Putative Rule 23 Ohio Class**

Defendant's Objection further complains that the random sample ordered by the Court "fails to consider the putative Rule 23 Ohio class (*i.e.*, the possibility that none of the randomly selected 94 opt-in plaintiffs worked as a Solutions Specialist in Ohio)."  (Objection at 2, ECF No. 64.)  The reason for this is simple: the parties did not ask the Court to resolve any discovery disputes related to the putative Rule 23 Ohio class, either in their proposed scheduling order or during the in-person discovery conference.  Defendant raised the putative Ohio class for the first time in its Objection.

The putative Ohio class, brought under Fed. R. Civ. P. 23, differs from the conditionally-certified FLSA class, brought under the collective action provisions of 29 U.S.C. § 216, in important respects.  First, no certification of the Ohio class has yet occurred.  At present, Plaintiff

7

Rosenbohm is the only member of the putative Ohio class that is currently before the Court. Further, the absent Ohio class members have not yet been notified of the potential class action and will not be notified unless and until the Court certifies a class under Rule 23. And even if they are notified in the future, they will not be required under Rule 23 to affirmatively opt in to the Ohio class as were the FLSA class members; rather, upon class certification, they will automatically become members of the Rule 23 class unless they affirmatively opt out. Fed. R. Civ. P. 23(c)(2)(B). As explained by the United States Supreme Court:

> Unlike a defendant in a normal civil suit, an absent class action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection. In most class actions an absent plaintiff is provided at least with an opportunity to "opt out" of the class, and if he takes advantage of that opportunity he is removed from the litigation entirely.

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985). As a result, "[r]equiring absent class members to respond to discovery threatens to turn a class suit into an 'opt in' procedure rather than an 'opt out' mechanism, an approach the Supreme Court has squarely rejected." 3 Newberg on Class Actions § 9:11 (5th ed.) (citing *Phillips*, 472 U.S. at 812–13). Accordingly, "[d]iscovery from absent members of a class should be sharply limited and allowed only on a strong showing of justification." *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, No. C-1-01-704, 2004 WL 7081790, at *4 (S.D. Ohio June 7, 2004); *see also Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-758, 2014 WL 3615807, at *5 (N.D. Ohio July 21, 2014) ("Generally, absent class members in a Rule 23 class action are not subject to discovery.").

Although some showing of need is uniformly required before permitting discovery of absent class members, the courts in the Sixth Circuit have yet to arrive at a consensus as to what showing defendants must make. *See*, *e.g.*, *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-00882, 2012 WL 4829802, at *2–3 (M.D. Tenn. Oct. 10, 2012) (To demonstrate

discovery of absent Rule 23 class members is warranted, the defendant must make "a strong showing" that "the information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to common questions **and unavailable from the representative parties;** and (3) is necessary at trial of issues common to the class.") (emphasis in original); *Groth v. Robert Bosch Corp.*, No. 1:07-CV-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008) ("The court should only allow discovery of absent class members upon a showing of 'particularized need,' which generally requires a demonstration that the discovery is addressed to common issues (as opposed to individual issues), that it is not designed to force class members to opt out, and that it would not impose an undue burden or require the deponent to seek legal or technical assistance to respond.") (citation omitted); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2014 WL 764617, at *2 (N.D. Ohio Feb. 26, 2014) (endorsing the Manual for Complex Litigation's "particularized need" rule).

Defendant did not indicate, either in its Objection or at the May 15, 2019 conference, that it is currently seeking discovery of absent class members. If, in the future, Defendant wishes to take discovery of absent class members, it may seek leave of court to do so upon a showing of particularized need.

### III. DISPOSITION

In light of the time it has taken the parties and the Court to address Defendant's objections and the upcoming deadlines in the existing Scheduling Order, the Court hereby **VACATES** the April 17, 2019 Scheduling Order (ECF No. 63) and sets forth the following discovery deadlines:

(1) Second-Phase Discovery (encompassing all issues other than damages) shall be completed by July 15, 2020.

(2) The parties shall coordinate to serve a questionnaire on the 94 opt-in plaintiffs and Named Plaintiff Rosenbohm no later than July 31, 2019.  Responses are due within 30 days (August 30, 2019).  Plaintiffs' counsel shall distribute the questionnaire and collect the responses.  Plaintiffs' counsel shall provide the responses to defense counsel no later than September 16, 2019.  Defendant is permitted to file a motion seeking all opt-ins who fail to respond to the questionnaire to be dismissed with prejudice, and Plaintiff will have an opportunity to respond to the motion.  The Court will determine whether each opt-in should be dismissed after briefing. For each opt-in who fails to respond to the questionnaire, the parties will work together to randomly select an additional opt-in for opt-in discovery.

(3) Defendant shall produce time, payroll, and scheduling data for the (i) Named Plaintiff and (ii) each Verified Opt-in (as agreed upon or ordered) eligible to participate in the case. This production shall be made on a rolling basis and shall be complete by July 31, 2019.

(4) Defendant shall produce existing policies in the period relevant to this litigation related to Solutions Specialist timekeeping, scheduling, and closing procedures by July 31, 2019.

(5) Defendant shall serve written discovery on the 94 randomly selected opt-ins no later than November 15, 2019.  Responses are due within 60 days.  Defendant is permitted to file a motion seeking all opt-ins who fail to respond to written discovery to be dismissed with prejudice, and Plaintiff will have an opportunity to respond to the motion.  The Court will determine whether each opt-in should be dismissed after briefing.  For each opt-in who fails to respond to written discovery, the parties will work together to randomly select an additional opt-in for opt-in discovery.

(6) On or before February 14, 2020, Defendant may serve follow-up written discovery requests.  Responses are due within 30 days.  Defendant is permitted to file a motion seeking all opt-ins who fail to respond to written discovery to be dismissed with prejudice, and Plaintiff will have an opportunity to respond to the motion.  The Court will determine whether each opt-in should be dismissed after briefing. For each opt-in who fails to respond to written discovery, the parties will work together to randomly select an additional opt-in for opt-in discovery.

(7) Parties shall endeavor to complete supplementing of initial disclosures/identifying fact witnesses and documents no later than April 15, 2020.  However, the parties remain under a continuing obligation to supplement or correct previous disclosures under Fed. R. Civ. P. 26(e) after this date.

(8) Named Plaintiff shall disclose, in accordance with Fed. R. Civ. P. 26(a)(2)(B), any experts on whom he intends to rely in connection with Second-Phase Submissions (i.e., submissions on any issues other than damages) by April 15, 2020.

(9) Defendant shall disclose, in accordance with Fed. R. Civ. P. 26(a)(2)(B), any experts on whom it intends to rely in connection with Second-Phase Submissions (i.e., submissions on any issues other than damages) by June 10, 2020.

(10) Plaintiff's motion for class certification under Fed. R. Civ. P. 23 shall be filed by August 31, 2020.

(11) Defendant's motion to decertify shall be filed by August 31, 2020.

(12) All dispositive motions (e.g., Defendant's anticipated motion for summary judgment as to the individual claims of Name Plaintiff Rosenbohm (and other opt-ins as appropriate) shall be filed by August 31, 2020.

(13) Memoranda in opposition, either to Plaintiff's motion for class certification, Defendant's decertification motion, and dispositive motions, shall be filed by October 15, 2020.

(14) Replies in support, of either Plaintiff's motion for class certification, Defendant's decertification motion, and dispositive motions, shall be filed by November 13, 2020.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE