UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NEIL ROSENBOHM, on behalf of himself and all others similarly situated, | ) | CASE NO.: 2:17-CV-00731-ALM |
| | ) | |
| | ) | JUDGE ALGENON L. MARBLEY |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE VASCURA |
| vs. | ) | |
| | ) | |
| CELLCO PARTNERSHIP | ) | **JOINT MOTION FOR APPROVAL OF** |
| d/b/a Verizon Wireless | ) | **SETTLEMENT AND STIPULATION OF** |
| | ) | **DISMISSAL WITH PREJUDICE** |
| Defendant. | ) | |

## TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND..........................................3

        A.      The Lawsuit ...............................................................................................3

        B.      Negotiation of The Settlement ..................................................................5

        C.      The Settlement Terms ................................................................................6

III.    THE PROPRIETY OF APPROVAL......................................................................7

        A.      The Court Should Approve the FLSA Settlement. .................................7

                a.      The Proposed Settlement Is the Product of Contested Litigation. ..............8

                b.      The Proposed Settlement Reflects a Fair and Reasonable
                        Resolution of a *Bona Fide* Dispute Between the Parties. ...........................8

                        i.      *Bona Fide* Dispute Between the Parties Over Liability.................8

                        ii.     The Proposed Settlement Is Fair and Reasonable...........................9

                                1.      There is no risk of fraud or collusion..................................9

                                2.      This is a complex case with high expenses and the
                                        duration could last many years. ......................................10

                                3.      The Parties have engaged in substantial discovery...........11

                                4.      There is no guarantee of success on the merits.................12

                                5.      Counsel and Named Plaintiff Rosenbohm support
                                        the settlement and there are no absent members...............13

                                6.      The Settlement distributions are fair, reasonable and
                                        adequate. ..........................................................................13

        B.      The Requested Service Awards Should Be Approved. .........................15

        C.      Plaintiffs' Counsel's Attorneys' Fees and Litigation Costs Are Reasonable
                and Should Be Approved. .......................................................................16

                a.      Plaintiffs' Requested Attorney's Fees in the Amount of $650,000
                        Are Reasonable. .......................................................................................16

                        i.      Value of the Benefit Provided.......................................................19

i

|  |  | ii. | Society's Interest in Rewarding Attorneys | 19 |
|  |  | iii. | Whether Services Were Undertaken on Contingent-Fee Basis | 20 |
|  |  | iv. | Value of Services Rendered on an Hourly Basis | 20 |
|  |  | v. | Complexity of the Litigation | 22 |
|  |  | vi. | Professional Skill and Standing of Counsel | 24 |
|  | b. | Plaintiff's Litigation Costs Should Be Approved. | 24 |
| D. | The Court Should Approve the Settlement Administrator's Fee | 25 |
| IV. | CONCLUSION | 25 |

## I.    SUMMARY OF ARGUMENT

The Parties, Neil Rosenbohm ("Named Plaintiff Rosenbohm") and Cellco Partnership d/b/a Verizon Wireless ("Defendant" or "Verizon Wireless") respectfully move this Honorable Court to review the Parties' Settlement Agreement (the "Settlement") and for an Order approving the Settlement as fair and reasonable.

The proposed settlement will resolve bona fide disputes involving off-the-clock work allegations against Verizon Wireless under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio wage-and-hour statute.  Plaintiff asserted that Defendant unlawfully failed to pay its hourly, non-exempt employees, including Plaintiff and other Solution Specialists, for all hours worked.  Specifically, Plaintiff alleged that Solutions Specialists were required by Defendant to perform unpaid work off-the-clock at the end of their shifts.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.  The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and reached on March 2, 2020 after a full-day mediation in Chicago, Illinois, with Michael Dickstein, a nationally-recognized and well-respected mediator of FLSA collective actions.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit 1:    Settlement Agreement

    Exhibit 1A:    List of Plaintiffs Dismissed With Prejudice

    Exhibit 1B:    List of Individuals to Be Dismissed Without Prejudice

    Exhibit 1C:    List of Individuals to Be Dismissed With Prejudice

    Exhibit 1D:    List of Opt-ins who are Settlement Class Members

Exhibit 1E:     Individual Release Agreement for Neil Rosenbohm

Exhibit 1F:     [Proposed] Order Approving Settlement and Dismissal with Prejudice

Exhibit 1G:     Timeline of Proposed Procedure for Settlement Administration

Exhibit 2:     Declaration of Counsel Chastity L. Christy

Exhibit 3:     Declaration of Counsel Michael Fradin

Exhibit 4:     Declaration of Counsel Douglas M. Werman

Pursuant to Local Rule 7.2(a)(3), the Parties provide this succinct, clear, and accurate summary of the Memorandum, as it exceeds twenty pages. The Memorandum starts with a summary of the factual and procedural background of this case, supported with reference to the record and the declaration of Plaintiffs' Counsel Chastity L. Christy. *See* Part II, below. This background section describes the motion practice, discovery process, and settlement negotiations that resulted in the Parties' agreement to resolve this matter. This section also describes the specific terms of the Parties' Settlement.

Part III of the Memorandum describes the applicable standard for approval of a settlement under the FLSA. A Court must determine whether the settlement was reached as a result of contested litigation and whether it is a fair and reasonable resolution of a *bona fide* dispute. Part III(A) addresses why this litigation was contested, why the dispute was *bona fide,* and why the resolution is fair and reasonable. The latter inquiry involves seven factors in the Sixth Circuit: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *See UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007).

Part III(A)(b)(ii) describes why this settlement is fair and reasonable under this multi-factor test.

Part III(B) describes the service award contemplated in the Settlement and justifies this award in light of the services provided by Named Plaintiff Rosenbohm in this suit. Part III(C) describes Plaintiffs' Counsel's request for attorney's fees and litigation costs. This section discusses the general practice in Ohio of awarding one-third of the fund in an FLSA settlement. This section also discusses the six factors the Sixth Circuit identified in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) for analyzing a request for attorneys' fees: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. Finally, Part III(D) describes the Parties' request for approval of the costs of a third-party administrator.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Lawsuit

On August 19, 2017, Named Plaintiff Neil Rosenbohm filed this Lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and, on November 9, 2017, filed his Amended Complaint individually, and on behalf of other non-exempt Solutions Specialists who worked in the Company's retail stores nationwide, asserting off-the-clock work allegations against Verizon Wireless under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03. (Dkt. No. 1.)

Specifically, Named Plaintiff Rosenbohm alleged that he and other similarly-situated employees were required by Defendant to perform unpaid work off-the-clock at the end of their

3

shifts, including, but not limited to: (a) straightening up the store; (b) preparing a checklist for the next day; (c) cleaning the store's office; (d) logging out of workstations; (e) ensuring workstations are cleaned; (f) sending out nightly sale numbers to the district manager; (g) waiting for another representative who was with a customer; and (h) setting store alarms. *Id.*

On January 12, 2018, Named Plaintiff Rosenbohm filed a Motion for Conditional Certification, Expedited Opt-in Discovery, and Court-Supervised Notice To Potential Opt-in Plaintiffs ("Motion for Conditional Certification"), seeking to certify a nationwide class of Solution Specialists who work or worked in one of the Company's retail stores during the relevant period. (Dkt. No. 21.) On March 2, 2018, Verizon filed its Opposition Brief. Dkt. No. 30. On March 16, 2018, Plaintiff filed his Reply Brief. (Dkt. No. 32.)

On September 17, 2018, this Court granted Named Plaintiff Rosenbohm's Motion for Conditional Certification and, pursuant to 29 U.S.C. § 216(b), conditionally certified a class consisting of "all former and current Solutions Specialists employed by Cellco Partnership nationwide at any time during the three years prior to the granting of [the] motion to the present." (Dkt. No. 35.)

On October 30, 2018, the Notice was mailed via First Class mail and emailed to approximately 33,000 potential class members, and the Notice Period closed on November 29, 2018. (Exhibit 2, Declaration of Chastity L. Christy, ¶ 20.) At the close of the Opt-In Period, nearly 4,000 individuals filed consent forms opting into the lawsuit (the "Opt-In Plaintiffs," and together with Named Plaintiff Rosenbohm, "Plaintiffs"). (*Id.*)

The Parties agreed to engage in a due diligence period between December 2018 and March 2019, during which time Defendant provided timekeeping, payroll, and scheduling records for an agreed-upon number of Plaintiffs to facilitate settlement discussions. (*Id.* at ¶ 21.)

4

Between March 2019 and February 2020, the Parties engaged in close to a year of discovery, including written discovery, which included the production of policy documents and additional timekeeping, payroll and scheduling data, and distribution of an agreed-upon questionnaire to more than 190 Plaintiffs. (*Id*. at ¶ 22.)

Additionally, Plaintiffs' Counsel engaged in discussions and correspondence with the Plaintiff and Opt-In Plaintiffs, including distributions of various surveys relating to off-the-clock claims, as well and numerous telephone interviews. (*Id*. at ¶¶ 56-57.)

**B.**     **Negotiation of The Settlement**

Between December 2018 and February 2020, the Parties exchanged information and engaged in numerous telephone discussions regarding the calculation of damages and potential resolution. (*Id.* at ¶ 23.)

Between March 15, 2019 and March 2, 2020, the Parties engaged in settlement negotiations, including the exchange of numerous letters and discussions between Counsel for the Parties detailing the Parties' legal and factual positions. (*Id.* at ¶ 24.)

On March 2, 2020, a mediation was held in Chicago, Illinois, with Michael Dickstein, a nationally-recognized and well-respected mediator of FLSA collective actions and, after a full-day mediation, in an effort to reach a compromise and to avoid the continued expense and burden of litigation, the Parties reached an agreement to settle the Lawsuit on the terms set forth in the Settlement Agreement attached hereto as Exhibit 1. (*Id.* at ¶ 25.)

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. (*Id.* at ¶ 27.) Prior to filing the Lawsuit, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (*Id.*) The Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims.

(Exhibit 3, Christy Decl. at ¶ 28.) This included a complete analysis and calculations of Named Plaintiff Rosenbohm's and Opt-In Plaintiffs' alleged off-the-clock damages. (*Id.*) Counsel for the Parties engaged in numerous and lengthy discussions regarding the damages calculations and Plaintiffs' claims and Defendant's defenses. (*Id.* at ¶ 29.)

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Named Plaintiff Rosenbohm and the Opt-In Plaintiffs identified in Exhibit 1D of the Settlement Agreement.

The Settlement Amount is One Million Nine Hundred Fifty Thousand Dollars ($1,950,000.00), which is inclusive of: (a) all of the Individual Settlement Payments to Plaintiffs; (b) Named Plaintiff Rosenbohm's Service Award Payment as approved by the Court; (c) Plaintiffs' Counsel's attorneys' fees and expenses as approved by the Court; and (d) the fees and costs associated with settlement administration as approved by the Court.

One Million Two-Hundred Twenty-One Thousand Twenty-Six Dollars and Thirty-Six Cents ($1,221,026.36) of the Settlement Amount will be divided into Individual Settlement Payments to the Plaintiffs. The Individual Settlement Payments will be calculated proportionally based on each Plaintiff's alleged off-the-clock damages during the Calculation Period.

Ten Thousand ($10,000.00) of the Settlement Amount will be paid to Named Plaintiff Rosenbohm, in addition to his Individual Settlement Payment, for his service as the Representative Plaintiff. In addition, $650,000.00 will be paid to Plaintiffs' Counsel for attorneys' fees and $46,973.64 for expenses incurred, and expected to be incurred, in the Lawsuit and administration of the settlement. Finally, $22,000.00 will be set aside for fees and expenses for a claims administrator to administer the settlement.

In exchange, the Lawsuit will be dismissed with prejudice, Plaintiffs will release Defendant from all off-the-clock work claims, rights, demands, liabilities and causes of action under federal

6

and state law, through the date of the Settlement, including without limitation all known or unknown claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses.

## III.   THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA.  As shown in the attached Declaration of Counsel Chastity L. Christy, and as explained below, Court approval is warranted.  (*See* Exhibit 2.)

### A.   The Court Should Approve the FLSA Settlement.

To approve an FLSA collective action settlement, a district court need only engage in a one-step process. *Carr v. Bob Evans Farms, Inc.,* No. 1:17-CV-1875, 2018 WL 7508650, at *2 (N.D. Ohio July 27, 2018). Because failure to opt in does not bar potential collective action members from bringing their own suits, and this settlement only covers persons who already joined this litigation, collective actions do not implicate the same due process concerns as class actions under Federal Rule of Civil Procedure 23. *Id.* For this reason, the standard for approval of a FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *see also Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (the court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness."). "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.,* 2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015).

7

### a.      The Proposed Settlement Is the Product of Contested Litigation.

The Settlement is a result of contested litigation, reached in the context of this Lawsuit. The Lawsuit has been pending for nearly three years, and was resolved only after substantial discovery and motion practice, including briefing regarding conditional certification and discovery disputes relating to the size and scope of representative discovery. In this context, the Parties had an opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. (Ex. 2, Christy Decl. ¶¶ 28-29.) And "the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *See Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007).

### b.      The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.

The second prong of the Court's settlement approval inquiry focuses on two issues: (1) confirming the existence of a *bona fide* dispute between the Parties and (2) reviewing the fairness and reasonableness of the proposed settlement. Both issues are satisfied here.

### i.      *Bona Fide* Dispute Between the Parties Over Liability.

Named Plaintiff Rosenbohm alleges that he and other similarly-situated Solutions Specialists were required by Defendant to perform unpaid work off-the-clock at the end of their shifts, including, but not limited to: (a) straightening up the store; (b) preparing a checklist for the next day; (c) cleaning the store's office; (d) logging out of workstations; (e) ensuring workstations are cleaned; (f) sending out nightly sale numbers to the district manager; (g) waiting for another representative who was with a customer; and (h) setting store alarms. Defendant denies that it engaged in any unlawful or improper conduct, including, expressly, all off-the-clock work claims of Plaintiffs, and denies all liability and damages of any kind to anyone regarding Plaintiffs'

claims.

The Parties also dispute whether collective treatment of Plaintiffs' FLSA claims was appropriate. Plaintiff filed a Motion for Conditional Certification, which was opposed by Defendant. Defendant continues to deny that the Lawsuit could be litigated on a collective action basis. Absent settlement, Defendant would file a motion for decertification of the conditionally certified class. If the Court granted Defendant's decertification motion, the nearly 4,000 Plaintiffs who filed consents to join the Lawsuit would need to file individual lawsuits in order to proceed with their individual claims.

### ii.     The Proposed Settlement Is Fair and Reasonable.

A district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)), *quoted in Crawford*, 2008 WL 4724499 at *3; *see also Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010).

### 1.     There is no risk of fraud or collusion.

This settlement was fairly and honestly negotiated. Plaintiffs' Counsel and Defendant's

Counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked. (*See* Exhibits 2-4.) The Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties, occurring after substantial discovery, motion practice, and Counsel for the Parties vigorously arguing their legal and factual positions. (Ex. 2, Christy Decl. ¶¶ 28-30.) Additionally, the Settlement was achieved through the assistance of a well-known and respected mediator, Michael Dickstein. In this context, there is a presumption that the risk of fraud or collusion is negligible. *Lewis v. Huntington Nat'l Bank*, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.); *see also Hainey*, 617 F. Supp. 2d at 673.

### 2. This is a complex case with high expenses and the duration could last many years.

The policy favoring the settlement of wage and hour actions and other complex cases applies with particular force here. Employment cases in general, and a wage-and-hour case of this particular scale – nearly 4,000 opt-in plaintiffs – are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims. (Ex. 2, Christy Decl. at ¶ 33.) The Parties disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied. (*Id*. at ¶ 35.) Defendant claims that even if Plaintiffs succeed on the merits, Plaintiffs cannot not prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. (*Id*.) As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendants' various defenses. If the litigation continued, Plaintiffs would have faced obstacles and uncertainties, including decertification, summary judgment, and potentially a trial. *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates

worked—a process requiring extensive and expensive additional discovery"); *Cornell v. World Wide Business Servs. Corp.,* 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs).

This matter has already been litigated for nearly three (3) years, and included substantial discovery and motion practice, including briefing regarding conditional certification and discovery disputes relating to the size and scope of representative discovery.  (Ex. 2, Christy Decl. at ¶ 30.) Further, the Parties have already incurred substantial expenses, prior to depositions taking place, including Plaintiffs' Counsel incurring $46,963.64 in expenses.  (*Id.* at ¶ 66.)

If forced to litigate this case further, the Parties will incur substantial expenses and fees in continuing discovery, including traveling to various states across the country to take depositions of Named Plaintiff Rosenbohm and the 94 discovery Opt-In Plaintiffs, as well as Rule 30(b) depositions of Defendant.  (*Id.* at ¶ 31.)  The out-of-pocket costs alone will exceed six-figures. (*Id.*)

Moreover, the Parties would incur substantial fees in further motion practice, including dispositive motions, a decertification motion, and a Rule 23 Motion for Certification.  (*Id.* at ¶ 32.) By the time of trial, the Parties' attorneys' fees on each side are likely to be in the millions, and costs exceeding six-figures. (*Id.* at ¶ 32.)

In view of the costs, risks and delay of continued litigation balanced against the benefits of settlement, the Settlement is in the best interests of the Plaintiffs as it provides substantial relief to Named Plaintiff Rosenbohm and the Opt-In Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution.  (*Id.* at ¶ 49.)

### 3.    The Parties have engaged in substantial discovery.

The Parties have engaged in substantial investigation prior to and during the settlement

11

negotiations, including formal discovery, and the issues are well understood by both sides. (Ex. 2, Christy Decl. at ¶¶ 26-29.) Relevant information was produced, including policy documents and timekeeping, payroll and scheduling data for the Plaintiffs, and Plaintiff's counsel distributed an agreed-upon questionnaire to more than 190 Plaintiffs. (*Id.* at ¶¶ 28-29.)

The legal issues in the case were thoroughly researched and briefed by Counsel for the Parties. (*Id.* at ¶¶ 26-29.) All of aspects of the dispute are well-understood by both sides. (*Id.*)

### 4. There is no guarantee of success on the merits.

The Parties recognize that the final outcome of the litigation is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk, time and expense. (*Id.* at ¶ 33.) Defendant denies that it engaged in any unlawful or improper conduct including, expressly, all off-the-clock work claims of Plaintiffs; denies all liability and damages of any kind to anyone regarding Plaintiffs' claims; and denies that this case could be litigated on a collective action basis. (*Id.*) The Parties further dispute whether collective treatment of Plaintiffs' FLSA claims is appropriate. (*Id.* at ¶ 36.)

There is no guarantee that the Plaintiffs will prevail on Defendant's anticipated motion to decertify the conditionally certified class or motion for summary judgment. (*Id.* at ¶ 37.) Moreover, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses at trial is uncertain as well. (*Id.* at ¶ 38.) Continued litigation could be risky for all Parties, and could result in appeals regardless of the outcome of the trial. (*Id.*)

If this ligation continues, Plaintiffs face obstacles and uncertainties, including extensive and expensive discovery, and potential losses during the decertification and summary judgment phases, and a trial. (*Id.* at ¶ 39.) *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, *3 (S.D. Ohio May, 2013) (Marbley, J.). For example, Plaintiffs would have had to show that they were actually performing off-the-clock work, which would require

12

significant discovery and testimony to establish. (*Id.* at ¶ 33.)

5.     **Counsel and Named Plaintiff Rosenbohm support the settlement and there are no absent members.**

The opinions of experienced Counsel of the Parties support the Settlement, as does Named Plaintiff Rosenbohm.  (*See* Exhibits 2-4.)  Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983), especially when the case has been developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006). Plaintiffs' counsel supports the Settlement. Ex. 2, Christy Decl. ¶¶ 42-43.

The Settlement includes only the Opt-In Plaintiffs who have filed written consent forms to join this Lawsuit and who agree to be bound by any settlement or judgment in this case. (*Id.* at ¶ 41; *see* Exhibit 1D.)  The Settlement does not include Opt-In Plaintiffs who have previously been dismissed from this Lawsuit with prejudice or those Opt-In Plaintiffs who the Parties seek to have dismissed at the time the Court enters an order approving the Settlement and dismissing the Lawsuit with prejudice.  (*See* Exhibits 1A, 1B and 1C.)  As such, there are no absent members.

6.     **The Settlement distributions are fair, reasonable and adequate.**

In reviewing an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). In the present case, the Settlement Agreement provides that the Settlement Payment, after deduction of the Service Award to Named Plaintiff Rosenbohm, attorneys' fees, litigation reimbursements to Plaintiffs' Counsel, and the costs of a third-party settlement administrator, will be divided into pro rata Individual Settlement Payments to Plaintiffs.

The benefit that Plaintiffs will receive from the Net Settlement Amount as compared to

the maximum they potentially could have received if they had prevailed at trial is fair and reasonable. The Individual Settlement Payments range from a minimum payment of $25.00 to a maximum payment of $1,424.07. Ex. 2, Christy Decl. ¶ 47. The Net Settlement Amount of $1,221,026.36 represents $322.85 per Plaintiff. *Id*. The Net Settlement Amount of $1,221,026.36 also represents the recovery of 62% of the alleged owed overtime wages of Plaintiffs, which is an excellent result. *Dillworth*, 2010 WL 776933, at *8 (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[1]

All Individual Settlement Payments will be calculated proportionally based on each Plaintiff's length of employment and alleged overtime hours worked during the Calculation Period. The Calculation Period for Plaintiffs is the date three years prior to the date each Opt-In Plaintiff filed with the Court his or her consent to join the Lawsuit until the latter of their termination of employment or September 29, 2019. Between June 7, 2015 and September 29, 2019, Plaintiffs allege that they were denied $1,976,905.89 in alleged owed overtime wages for approximately 24.5 minutes of off-the-clock work per week, based on the records provided by Defendant. This is reasonable method for settlement allocation. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No.

---

[1]     *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

3:16-CV-516, 2019 WL 6310376, at *2 (S.D. Ohio Nov. 25, 2019) (approving FLSA settlement and stating that it is reasonable to allocate settlement based on "(1) when [plaintiffs] opted into the case and (2) how many hours [plaintiffs]. Specifically, those individuals who filed claims earlier may have preserved more of their FLSA claims than those filing later claim forms.").

      B.    <u>The Requested Service Awards Should Be Approved.</u>

The Settlement contemplates providing a $10,000 Service Award to Named Plaintiff Rosenbohm.  Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)).  *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in

question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Counsel Michael Fradin's Declaration (*see* Exhibit 3) establishes that the proposed Service Award is proper and reasonable. (Ex. 3, Fradin Decl. at ¶¶ 17-19.) Named Plaintiff Rosenbohm's services were effective. (*Id.*) He provided extensive factual information to Plaintiffs' Counsel and faithfully engaged in numerous and extensive calls and other communications with Plaintiffs' Counsel. (*Id.*) Moreover, he subjected himself to the responsibilities of serving as named Plaintiff in a lawsuit against his former employer. (*Id.*)[2] The requested payment is proportional to service payments recently awarded to plaintiffs in other FLSA actions. *See Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).[3]

### C. Plaintiffs' Counsel's Attorneys' Fees and Litigation Costs Are Reasonable and Should Be Approved.

#### a. Plaintiffs' Requested Attorney's Fees in the Amount of $650,000 Are Reasonable.

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure

---

[2] *See Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case; *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).

[3] *See also*, *Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action).

enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App' 496, 498 (6th Cir. 2011). The Court has the discretion to use either the lodestar method or a percentage of the common fund to award reasonable attorney fees. *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (*citing See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993)). "In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted). Here, Plaintiffs request that the Court use the percentage method and award them one-third of the settlement fund.

"In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the fund "is a normal fee amount in a wage and hour case.")[4] The Ohio practice is in accord with the practice

---

[4]    *See also Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *5 (N.D. Ohio May 4, 2018) (awarding one-third of the fund); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *1 (N.D. Ohio Mar. 8, 2010) (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement); *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52

throughout the Sixth Circuit and nationwide.[5] Here, Plaintiffs' Counsel requests an award of one-third of the settlement fund as a fee award.

The Sixth Circuit considers the following factors in determining whether the requested fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

---

percent of maximum settlement fund to counsel in wage and hour case); *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (awarding 33 percent of $4 million settlement fund in wage and hour case); *Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *5-6 (S.D. Ohio Nov. 13, 2017) (awarding one-third of $450,000 fund).

[5] In *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007), the district court approved a one-third attorneys' fee in an FLSA settlement much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

### i. Value of the Benefit Provided

Under this Settlement, all Plaintiffs receive direct cash payments representing a substantial recovery on their alleged off-the-clock work claims. There is no initial claims process that can dramatically decrease participation in the settlement. *See Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (noting, with concern, that the claims process in wage and hour settlement resulted in only 14 percent of eligible participants opting into the settlement). Instead of the risks of continued litigation, the Individual Settlement Payments provide Plaintiffs 62% of their alleged owed wages, which is well above the average recovery in FLSA lawsuits. For example, in *Dillworth*, 2010 WL 776933, at *8, the Court concluded that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average. Similarly, in *Rotuna.,* 2010 WL 2490989 at *8 the Court explained that **a** recovery of 75% to 25% of claimed wages as "exceptional."); Measured against that standard, the Settlement in the present case is exemplary. The Individual Settlement Payments represent approximately 62% of the alleged owed overtime wages Plaintiffs were allegedly denied for 24.5 minutes of off-the-clock work per week, after deduction of the Service Award to Named Plaintiff Rosenbohm, attorneys' fees, litigation reimbursements to Plaintiffs' Counsel, and the cost of a third-party settlement administrator.

### ii. Society's Interest in Rewarding Attorneys

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). Plaintiffs' counsel took on this matter to represent Plaintiffs in their off-the-clock work claims against Defendant and litigated for nearly three years against experienced Defendant's Counsel. This factor supports awarding

the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

### iii. Whether Services Were Undertaken on Contingent-Fee Basis

Plaintiffs' Counsel undertook the representation on a purely contingent basis. Ex. 3, Fradin Decl. ¶ 7. Thus, Plaintiffs' Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect – very real in this case, considering the possibility of decertification and later dispositive motions – that the investment of substantial attorney time and resources would be lost. *Id*. Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. (Ex. 2, Christy Decl. at ¶ 61.) At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiffs were at great risk for non-payment. (*Id.*) This risk of non-payment strongly supports the amount requested here.

### iv. Value of Services Rendered on an Hourly Basis

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the

venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)). There is, however, an exception to the general rule that the prevailing market rates of the local community govern the lodestar analysis, and, in this circuit, the exception is known as the "out-of-town specialist." *See Hadix,* 65 F.3d at 535 (citation omitted); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Attorneys who specialize in particular fields tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive. *See Chrapliwy,* 670 F.2d at 769 (emphasis added). When fees are sought for an "out-of-town specialist," "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix,* 65 F.3d at 535, citing *Chrapliwy,* 670 F.2d at 768–69.

Here, the Lawsuit was initiated by Michael L. Fradin, who is highly experienced in civil rights and employment matters, and who is the only lawyer in Southeast Ohio who represents plaintiffs in class and collective actions. Ex. 3, Fradin Decl. ¶¶ 6-7. It was reasonable for Plaintiffs to also retain Anthony Lazzaro and his team, who are experienced and accomplished wage and hour attorneys in Ohio, and whose practice includes similar representation across the country. Ex. 3, Fradin Decl. ¶ 8. When settlement negotiations stalled, Plaintiffs retained counsel from outside the local community with extensive experience in wage and hour class mediation, Doug Werman. *Id.* Werman Salas P.C. are known and recognized lawyers in wage and hour litigation, and have an excellent national reputation. *Osman, et al. v. Grube, Inc., et al.*

21

2018 WL 2095172, at *4 (N.D. Ohio May 4, 2018)

Here, to date, Plaintiffs' Counsel's total lodestar fees are $680,571.77. Ex. 2, Christy Decl. ¶ 47; Ex. 3, Fradin Decl. ¶ 10; Ex. 4 Werman Decl. ¶ 22. The allocation of fees by timekeeper and their reasonable rates are detailed in the supporting declarations attached hereto. Ex. 2, Christy Decl. ¶ 47; Ex. 3, Fradin Decl. ¶ 13; Ex. 4 Werman Decl. ¶¶ 22-23.

Plaintiffs' Counsel's requested fee is $650,000 and represents a *negative* 1.05 multiplier of their current lodestar. This Court and others from this district have approved multipliers in other cases awarding a percentage of the fund, including similar wage and hour actions. *See, e.g.,* *Castillo*, 2015 WL 13021899, at *7 (Marbley, J.) (2.5 multiplier of counsel's lodestar); *Swigart*, 2014 WL 3447947, at *6 (2.57 multiplier of counsel's lodestar).[6] In this complex class action settlement, which resolves the claims of thousands of employees, Plaintiffs' Counsel's lodestar is likely to substantially increase in the future. Plaintiffs' Counsel will spend time fulfilling their obligations in the Settlement Agreement, administering the Settlement, and responding to Plaintiffs' and thousands of Plaintiffs' inquiries. *Id*.

### v. Complexity of the Litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 WL 3447947, at *7 (citation omitted). The parties faced complex motion practice, both over the merits, as well as on collective treatment.

The attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring

---

[6] *See also Johnson*, 2013 WL 2295880, at *6 (Marbley, J.) (2.25 multiplier of counsel's lodestar); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (3.06 multiplier).

competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Plaintiffs' Counsel's Declarations contain information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Exhibits 2 and 3.) Plaintiffs' Counsel has worked diligently in representing Named Plaintiff Rosenbohm and the Opt-In Plaintiffs. Prior to filing the Lawsuit, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (Ex. 2, Christy Decl. at ¶ 27; Ex. 3, Fradin Decl, at ¶ 11.) This included interviewing and obtaining declarations from numerous putative class members. (Ex. 2, Christy Decl. at ¶ 27; Ex. 3, Fradin Decl. at ¶ 11.)

Over the course of almost (3) years, this matter was contentiously litigated. (Ex. 2, Christy Decl.¶ 30.) The Parties engaged in substantial discovery and significant motion practice. (*Id.* at ¶ 52.) Plaintiff filed a Motion for Conditional Certification, which Defendant opposed. (*Id.*) The Parties engaged in disputes relating to representative discovery, which included conferences with Magistrate Judge Vascura and the filing of Objections and a Response to Magistrate Judge Vascura's Opinions and Orders relating to representative discovery. (*Id.* at ¶ 52.)

Plaintiffs' Counsel issued the Notice via First-Class Mail and email to approximately 33,000 putative class members, and spoke to hundreds of class members during the course of the notice administration (*Id*. at ¶ 53.)

The Parties engaged in close to a year of discovery, including written discovery, which included the production and review of policy documents and timekeeping, payroll and scheduling data. (Ex. 2, Christy Decl. at ¶ 54.) Moreover, discovery included the distribution of an agreed-upon questionnaire, which was sent to more than 190 Plaintiffs. (*Id.* at ¶ 55.) The questionnaires

were sent to Opt-In Plaintiffs from the period of time between July 31, 2019 and February 21, 2020, as certain Opt-In Plaintiffs failed to respond and were dismissed with prejudice from the Lawsuit. (*Id*.) Plaintiffs' Counsel served the questionnaires, made calls to Opt-In Plaintiffs in an attempt to get them to respond to the questionnaires, and engaged in telephone conferences with Opt-In Plaintiffs who had questions relating to the questionnaires. (*Id*.)

Additionally, Plaintiffs' Counsel engaged in discussions and correspondence with the Named Plaintiff Rosenbohm and thousands of the Opt-In Plaintiffs relating to their off-the-clock work claims, including hundreds of telephone conferences and interviews. (*Id*. at ¶56.) Plaintiffs' Counsel distributed two separate sets of surveys to the approximately 4,000 Plaintiffs, and reviewed and analyzed all of the responses submitted. (*Id*. at ¶ 59.)

Moreover, Plaintiffs' Counsel reviewed and analyzed time, pay, and schedule data of the Plaintiffs, and performed substantial calculations relating to the alleged damages, which included preparing spreadsheets detailing the calculations performed for the Plaintiffs. (*Id*. at ¶ 60; Ex. 4, Werman Decl. at ¶ 15-19.)

### vi.     Professional Skill and Standing of Counsel

Counsel are highly qualified and experienced, and each have substantial credentials in federal courts and class and collective action litigation. Ex. 2, Christy Decl. ¶¶ 2-15; Ex. 3, Fradin Decl. ¶ 3-6; Ex. 4 Werman Decl. ¶ 4-14.

For the foregoing reasons, Plaintiffs' Counsel's requested attorney's fees of $650,000 should be approved.

### b.      Plaintiff's Litigation Costs Should Be Approved.

The litigation expenses sought to be reimbursed are proper and reasonable. Expenses are estimated to be approximately $46,973.64, which includes costs of $29,153.07 for mailing the Notice to putative collective action members, $11,500.00 for the mediator's fees, and $2,301.00

24

in travel and other expenses for Plaintiffs' Counsel to attend the mediation in Chicago, Illinois. (Ex. 2, Christy Decl at ¶ 66; Ex. 3, ¶ 16.) The expenses incurred are reasonable and their reimbursement should be approved. *Swigart*, 2014 WL 3447947, at *7 (reimbursing $39,406.46 in out-of-pocket litigation expenses" that "were reasonable and necessary in connection with litigating and resolving this case and are reimbursable.").

### D. The Court Should Approve the Settlement Administrator's Fee

The Could should approve $22,000.00 as settlement administration costs for fees and expenses for a third-party administrator to administer the settlement funds. (Ex. 2, Christy Decl at ¶ 66.) All expenses were incurred during the course of the litigation of this Lawsuit or will be incurred during the administration of the Settlement, including the cost of a third-party administrator. (*Id*. at ¶ 66; Ex. 3, Fradin Decl. at ¶ 16 .)

## IV. CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the Proposed Order Approving Settlement and Dismissal with Prejudice attached as hereto as Exhibit 1F to the Settlement Agreement.

Respectfully submitted,

/s/ Chastity L. Christy
Chastity L. Christy (0076977)
Anthony J. Lazzaro (0077962)
Lori M. Griffin (0085241)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
chastity@lazzarolawfirm.com
lori@lazzarolawfirm.com

/s/ Tonya B. Braun (with consent)
Tonya B. Braun (0075048)
Jones Day
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Phone: (614) 469-3939
Facsimile:  (614) 461-4198
tbraun@jonesday.com

Stanley Weiner (0083382)
Jones Day
2727 North Harwood Street
Dallas, Texas 75201
Phone:  (214) 969-3731

Michael L. Fradin
Law Office of Michael L. Fradin
8401 Crawford Avenue, Suite 104
Skokie, Illinois 60076
Phone:  847- 644-3425
Facsimile:  847-673-1228
mike@fradinlaw.com

Douglas M. Werman
Werman Salas, P.C.
77 West Washington St., Suite 1402
Chicago, Illinois 60602
Phone:  312-419-1008
dwerman@flsalaw.com

Facsimile: (214) 969-5100
sweiner@jonesday.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


/s/ Chastity L. Christy
Chastity L. Christy